# IN THE UNITED STATES DISTRICT COURT

# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CATARINA SEGURA, | CASE NO. 1:03-cv-6141 TAG |
| Plaintiff, | MEMORANDUM DECISION AND ORDER ON PLAINTIFF'S APPEAL FROM ADMINISTRATIVE DECISION |
| vs. | ORDER DIRECTING THE CLERK TO ENTER JUDGMENT IN FAVOR OF DEFENDANT AND AGAINST PLAINTIFF |
| JO ANNE B. BARNHART, Commissioner of Social Security, | |
| Defendant. | |

Catarina Segura ("claimant" or "plaintiff") seeks judicial review of an administrative decision denying her claim for disability benefits under the Social Security Act ("Act"). Pending before the Court is claimant's appeal from the administrative decision of the Commissioner of Social Security ("Commissioner"). Claimant filed her complaint on August 21, 2003, and her opening brief on July 14, 2004. The Commissioner filed her opposition to the appeal on September 16, 2004. Claimant filed a reply brief on August 1, 2004.

Pursuant to 28 U.S.C. § 636(c) and Fed. R. Civ. P. 73, the parties consented to proceed before a United States Magistrate Judge, and, by an order dated May 2, 2004, this action was assigned to the United States Magistrate Judge for all further proceedings.

# JURISDICTION

On September 15, 2000, claimant filed an application for Supplemental Security Income ("SSI") benefits, alleging a disability onset date of October 7, 1997, due to hypertension, hand problems and back pain. (Administrative Record ("AR") 423-425, 445). The application was denied initially and on reconsideration. (AR 400-403, 406-409).

After timely requesting a hearing, claimant appeared before Administrative Law Judge ("ALJ") Joanne S. Birge on March 5, 2002, at which time she heard testimony solely from claimant. (AR 131-157). On August 12, 2002, the ALJ issued a decision finding that claimant was not disabled. (AR 115-122). The Appeals Council denied a request for review on July 27, 2003. (AR 10-12). The Appeal Council's decision became the final decision of the Commissioner, which is appealable to the district court pursuant to 42 U.S.C. § 405(g). Claimant filed this action for judicial review pursuant to 42 U.S.C. § 405(g).

# STATEMENT OF FACTS

The facts have been presented in the administrative hearing transcript, the ALJ's decision, the briefs of both claimant and the Commissioner and will only be summarized here. Claimant was born on December 28, 1950, making her 51 years old on the date of the ALJ's decision. (AR 423; 122). Claimant indicated that the highest grade she completed in school was the eighth grade. (AR 135). She testified that she last worked in 1997 at a hotel as a housekeeper and her past relevant work experience consists solely of work as a housekeeper. (AR 446, 136-138).

She indicated at the time of the administrative hearing that she had three on-the-job injuries, including a 1994 injury to her left thumb, a 1995 injury to her lower back and a 1996 injury to her lower back. (AR 138-139, 142). Claimant stated that she had surgery on her left thumb in 1997 but that the surgery made the symptoms of her left thumb worse. (AR 139, 141). Specifically, she indicated that she had left hand pain, which had increased since surgery, and that she had difficulty gripping and grasping with her left hand. (AR 140-141). With regards to her low back pain, claimant stated that the pain prevents her from sitting in one spot for more than 15 minutes at one

///

///

time and from standing more than 15 minutes at one time. (AR 142-143). She additionally testified that, about once a month, she has heart problems or angina that result in chest pain when she experiences stress or when she panics. (AR 154-155). Claimant indicated she had been going to mental health to see a psychiatrist for about two months as well. (AR 154).

Claimant testified that she attempts to clean or do a little work around the house, in the form of washing the dishes, sweeping and mopping, but that her daughter and roommate help out with the housework and grocery shopping. (AR 145, 148). She stated that she prepares meals; i.e., makes sandwiches, three times a day, every day. (AR 147-148). She also cooks Spanish meals and chicken soup on occasion. (AR 148). Claimant testified that she walks for exercise about once a week for 30 minutes, and, once a month, she takes a bus to pay her bills. (AR 148-150). She indicated that she also leaves her house to go to doctor visits and for medical treatment. (AR 151).

## SEQUENTIAL EVALUATION PROCESS

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). The Act also provides that a claimant shall be determined to be under a disability only if her impairments are of such severity that claimant is not only unable to do her previous work but cannot, considering claimant's age, education and work experiences, engage in any other substantial gainful work which exists in the national economy. 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

The Commissioner has established a five-step sequential evaluation process for determining whether a person is disabled. 20 C.F.R. §§ 404.1520, 416.920. Step one determines if she is engaged in substantial gainful activities. If she is, benefits are denied. 20 C.F.R. §§ 404.1520(b), 416.920(b). If she is not, the decision maker proceeds to step two, which determines whether claimant has a medically severe impairment or combination of impairments. 20 C.F.R. §§ 404.1520(c), 416.920(c).

///

///

If claimant does not have a severe impairment or combination of impairments, the disability claim is denied. If the impairment is severe, the evaluation proceeds to the third step, which compares claimant's impairment with a number of listed impairments acknowledged by the Commissioner to be so severe as to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. § 404 Subpt. P App. 1. If the impairment meets or equals one of the listed impairments, claimant is conclusively presumed to be disabled. If the impairment is not one conclusively presumed to be disabling, the evaluation proceeds to the fourth step, which determines whether the impairment prevents claimant from performing work she has performed in the past. If claimant is able to perform her previous work, she is not disabled. 20 C.F.R. §§ 404.1520(e), 416.920(e). If claimant cannot perform this work, the fifth and final step in the process determines whether she is able to perform other work in the national economy in view of her age, education and work experience. 20 C.F.R. §§ 404.1520(f), 416.920(f). See, Bowen v. Yuckert, 482 U.S. 137 (1987).

The initial burden of proof rests upon a claimant to establish a *prima facie* case of entitlement to disability benefits. Rhinehart v. Finch, 438 F.2d 920, 921 (9th Cir. 1971). The initial burden is met once a claimant establishes that a physical or mental impairment prevents her from engaging in her previous occupation. The burden then shifts to the Commissioner to show (1) that the claimant can perform other substantial gainful activity and (2) that a "significant number of jobs exist in the national economy" which claimant can perform. Kail v. Heckler, 722 F.2d 1496, 1498 (9th Cir. 1984).

**STANDARD OF REVIEW**

Congress has provided a limited scope of judicial review of a Commissioner's decision. See, 42 U.S.C. § 405(g). A court must uphold the Commissioner's decision, made through an ALJ, when the determination is not based on legal error and is supported by substantial evidence. See, Jones v. Heckler, 760 F.2d 993, 995 (9th Cir. 1985); Sanchez v. Secretary of Health & Human Services, 812 F.2d 509, 510 (9th Cir. 1987) (two consulting physicians found applicant could perform light work contrary to treating physician's findings). "The [Commissioner's] determination that a claimant is not disabled will be upheld if the findings of fact are supported by substantial evidence." Delgado v.

Heckler, 722 F.2d 570, 572 (9th Cir. 1983) (*citing* 42 U.S.C. § 405(g)).  Substantial evidence is more than a mere scintilla, Sorenson v. Weinberger, 514 F.2d 1112, 1119 n.10 (9th Cir. 1975), but less than a preponderance.  McAllister v. Sullivan, 888 F.2d 599, 601-602 (9th Cir. 1989); Desrosiers v. Secretary of Health and Human Services, 846 F.2d 573, 576 (9th Cir. 1988).  Substantial evidence "means such evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971) (citations omitted).  "[S]uch inferences and conclusions as the [Commissioner] may reasonably draw from the evidence" will also be upheld.  Mark v. Celebrezze, 348 F.2d 289, 293 (9th Cir. 1965).  On review, the court considers the record as a whole, not just the evidence supporting the decision of the Commissioner.  Weetman v. Sullivan, 877 F.2d 20, 22 (9th Cir. 1989) (*quoting* Kornock v. Harris, 648 F.2d 525, 526 (9th Cir. 1980)).

It is the role of the trier of fact, not this court, to resolve conflicts in evidence.  Richardson, 402 U.S. at 400.  If evidence supports more than one rational interpretation, the court must uphold the decision of the ALJ.  Allen v. Heckler, 749 F.2d 577, 579 (9th Cir. 1984).  Nevertheless, a decision supported by substantial evidence will still be set aside if the proper legal standards were not applied in weighing the evidence and making the decision.  Brawner v. Secretary of Health and Human Services, 839 F.2d 432, 433 (9th Cir. 1987).  Thus, if there is substantial evidence to support the administrative findings, or if there is conflicting evidence that will support a finding of either disability or nondisability, the finding of the Commissioner is conclusive.  Sprague v. Bowen, 812 F.2d 1226, 1229-1230 (9th Cir. 1987).

## ADMINISTRATIVE FINDINGS

The ALJ noted that claimant has filed a number of prior disability applications seeking SSI benefits.[1]  (AR 115).  The ALJ found at step one that claimant has not engaged in substantial gainful activity since at least January 31, 1998.  (AR 116).  At step two, the ALJ determined that claimant has an adjustment disorder, mild personality disorder, not otherwise specified, depression, obesity,

---

[1] The ALJ indicated that claimant filed an application dated August 14, 1991, that was denied at the hearing level on August 16, 1993; an application dated October 4, 1995, that was denied at the initial level on December 7, 1995; an application dated March 5, 1996, that was denied at the hearing level on January 30, 1998; and an application dated November 22, 1999, that was denied at the initial level on April 5, 2000, with no indication of further pursuit by claimant.  (AR 115).  The ALJ considered all of claimant's prior filings closed and finally determined.  (AR 115).

osteoarthritis in the left hand and thumb, and a minor disc abnormality in the lumbar spine, impairments which are severe, but that she does not have an impairment or combination of impairments listed in or medically equal to one of the Listings impairments. (AR 116). The ALJ indicated that claimant has also been diagnosed with hypertension, sleep apnea and allergic rhinitis but that the hypertension was deemed well controlled by medication and the other impairments were considered non-severe. (AR 116). The ALJ found that claimant's subjective complaints "far exceed" what is supported by the medical record and thus determined her testimony warranted only limited credibility. (AR 117).

The ALJ found that claimant has the residual functional capacity to perform light work. (AR 121). She specifically determined that claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently, stand, walk and sit at least six hours in an eight-hour workday, but is unable to bend, stoop, kneel or crawl more than occasionally and is restricted to simple, repetitive tasks. (AR 121). The ALJ stated that because claimant has limitations beyond exertional and is restricted by postural and mental limitations, the Medical-Vocational Guidelines ("grids") were not applied to dictate the result in the case. (AR 121). Nevertheless, the ALJ concluded that, although claimant's residual functional capacity precluded claimant from performing her past relevant work as a housekeeper, using the grids as a framework, and considering claimant's residual functional capacity, age, education, and work experience, there were a significant number of jobs in the economy which claimant could perform despite her limitations. (AR 121). Accordingly, the ALJ found that claimant was not disabled within the meaning of the Social Security Act. (AR 121-122).

**ISSUES**

Claimant contends that the Commissioner erred as a matter of law. Specifically, she argues that:

1. The ALJ erred by failing to fully and fairly develop the mental health record;

2. The ALJ erred by failing to call a vocational expert at the administrative hearing when she found that claimant had mental and nonexertional limitations;

///

3. The ALJ failed to properly consider all of claimant's impairments, including sleep apnea, LVH with mitral regurgitations, cervical arthritis, HTN, MDD, PSTD, status post abdominal surgery, bilateral knee arthritis, bilateral hand arthritis, Heberden's nodes, and diabetes, at step two of the sequential evaluation process; and

4. Substantial evidence does not support the ALJ's residual functional capacity finding.

This court must uphold the Commissioner's determination that claimant is not disabled if the Commissioner applied the proper legal standards and there is substantial evidence in the record as a whole to support the decision.

## DISCUSSION

**A. Develop the Record**

Claimant contends that the ALJ erred by failing to fully and fairly develop the record in this case. (Court Doc. 13). Claimant argues that the ALJ failed to order further testing in light of claimant's diagnosed severe depression, and, if the ALJ had order further testing, the reports of medical professionals Dr. Josephine Collado and Dr. Maximo A. Parayno would have revealed that claimant's mental pathology meets Listing 12.04. (Court Doc. 13).

The ALJ has a duty to fully and fairly develop the record. Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). However, this duty does not negate the claimant's ultimate burden of proving disability. Mayes v. Massanari, 262 F.3d 963, 968 (9th Cir. 2001). The ALJ is required to take steps to obtain additional evidence where the medical evidence of record is insufficient to determine whether a claimant is disabled. 20 C.F.R. §§ 404.1512(e), 416.912(e). If a claimant can demonstrate prejudice or unfairness as a result of the ALJ's failure to fully and fairly develop the record, the decision may be set aside. Vidal v. Harris, 637 F.2d 710, 713 (9th Cir. 1991). Accordingly, with respect to the ALJ's duty to develop the record, the Ninth Circuit places the burden of proving prejudice or unfairness on the claimant.

Claimant bases her argument that the ALJ erred by failing to fully and fairly develop the record on Dr. Parayno's diagnosis of major depression, reached three months following the ALJ's decision, and Dr. Collado's two reports assessing major depression and post traumatic stress

///

syndrome, reached several months after the ALJ issued her decision. These medical professionals each also opined that claimant was unable to work due to her mental limitations. (AR 106; Court Doc. 13, Exh. 2). As noted above, in Social Security cases, the ALJ has a special duty to develop the record fully and fairly to ensure that the claimant's interests are considered, Brown, 713 F.2d at 443; however, this duty does not negate the claimant's burden of proving disability. Mayes, 262 F.3d at 968. Claimant contends that the ALJ should have developed the record and determined that claimant had a "Major Depressive Disorder and Post Traumatic Stress Disorder with psychotic features" even before these medical professionals produced their reports and made their findings. (Court Doc. 13). Accordingly, claimant would improperly shift her own burden to the ALJ. See, Mayes, 262 F.3d at 968.

It was claimant's duty to prove that she was disabled. 42 U.S.C. § 423(d)(5) ("An individual shall not be considered to be under a disability unless he furnishes such medical and other evidence of the existence thereof as the Secretary may require"). The Code of Federal Regulations explains as follows:

> [Y]ou have to prove to us that you are blind or disabled. Therefore, you must bring to our attention everything that shows that you are blind or disabled. This means that you must furnish medical and other evidence that we can use to reach conclusions about your medical impairment(s) and, if material to the determination of whether you are blind or disabled, its effect on your ability to work on a sustained basis. We will consider only impairment(s) you say you have or about which we receive evidence.

20 C.F.R. § 404.1512(a). 20 C.F.R. § 404.1512(c) ("You must provide medical evidence showing that you have impairment(s) and how severe it is during the time you say you are disabled"). Although claimant faults the ALJ for not obtaining additional records, the ALJ held the administrative record open, post-hearing, for the submission of additional evidence (AR 155), but neither claimant nor her counsel submitted any additional medical records. See, e.g., Tidwell v. Apfel, 161 F.3d 599, 602 (9th Cir. 1999) (where the ALJ discharged his duty to develop the record by identifying an evidentiary concern and holding the record open to allow the submission of additional evidence).

///

///

During the time period claimant stated she was disabled, claimant failed to provide the ALJ with any medical evidence indicating that the limitations resulting from her mental impairments were any more severe than as determined by Dr. Shireen R. Damania. Dr. Damania evaluated claimant on March 7, 2000. (AR 843-847). Dr. Damania noted claimant indicated that she feels depressed but that she did not take psychotropic medications because they made her feel "very sleepy." (AR 844). Claimant mainly complained of back and thumb injuries which prevented her from working since "she has mainly done housekeeping work, and does not have any education, and cannot do any other form of work." (AR 844). Dr. Damania diagnosed claimant with an adjustment disorder, not otherwise specified and a personality disorder, not otherwise specified, and gave claimant a global assessment of functioning ("GAF") score of 65-70.[2] (AR 846). Dr. Damania opined that any psychiatric difficulties claimant may have were due to a mild personality disorder; however, this diagnosis would not preclude her from gainful employment. (AR 846). Dr. Damania determined that no difficulties were noted in interpersonal skills or social functioning, no difficulties were noted in concentration, persistence and pace, claimant was able to understand, carry out and remember simple and complex instructions with no difficulty, and claimant is able to respond appropriately to co-workers and supervisors in normal work situations. (AR 846). Dr. Damania concluded there was "no psychiatric disability that would preclude the claimant from gainful employment." (AR 846). Claimant did not submit evidence that she had greater mental limits than revealed by Dr. Damania until after the ALJ issued her decision in this case finding claimant was not disabled.

An ALJ's duty to develop the record further is triggered only when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence. Tonapetyan v. Halter, 242 F.3d 1144, 1150 (9th Cir. 2001). The record before the ALJ was neither ambiguous nor inadequate to allow for proper evaluation of the evidence. Since there was sufficient

///

---

[2] A GAF of 70-61 is characterized as: "Some mild symptoms or some difficulty in social, occupational, or school functioning, but generally functioning pretty well." DIAGNOSTIC AND STATISTICAL MANUAL OF MENTAL DISORDERS 12 (3d ed. Rev. 1987).

9

evidence in the record from which the ALJ could make her determination, further inquiry regarding claimant's mental condition was not required.  Accordingly, the ALJ fulfilled her duty of fully and fairly developing the record in this case, and claimant has failed to demonstrate any resultant prejudice or unfairness.

**B.  Severe Impairment**

Claimant asserts that the ALJ erred at step two of the sequential evaluation process by failing to properly consider all of her impairments.  (Court Doc. 13).  Claimant contends that she has numerous impairments, besides those noted by the ALJ in this case, including sleep apnea, LVH with mitral regurgitations, cervical arthritis, HTN, MDD, PSTD, status post abdominal surgery, bilateral knee arthritis, bilateral hand arthritis, Heberden's nodes, and diabetes.  (Court Doc. 13).  She argues that even if these impairments were not "severe," they should be considered in the residual functional capacity assessment.  (Court Doc. 18).  The Commissioner argues that the ALJ's step two determination was supported by substantial evidence in the record and that claimant failed to establish that the alleged impairments were "severe" as defined by the Social Security Act.  (Court Doc. 17, pp. 8-9).

The regulations, 20 C.F.R. §§ 404.1520(c), 416.920(c), provide that an impairment is severe if it significantly limits one's ability to perform basic work activities.  An impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921.  Claimant has the burden of proving that she has a severe impairment.  42 U.S.C. § 423(d)(1)(A); 20 C.F.R. § 423(d)(1)(A), 416.912.  In order to meet this burden, claimant must furnish medical and other evidence to establish that she is blind or disabled.  20 C.F.R. § 416.912(a).

At the outset, it is significant to note that claimant alleges disability since October 7, 1997, due to hypertension, hand problems and back pain.  (AR 423-425, 445).  At the administrative hearing held on March 5, 2002, claimant complained of left thumb and lower back injuries and pain (AR 138-143).  She additionally testified that, about once a month, she has heart problems or angina that result in chest pain when she experiences stress or when she panics and that she had been going

///

to mental health to see a psychiatrist for about two months. (AR 154-155). Claimant, however, did not allege disability or significant limitations from sleep apnea, LVH with mitral regurgitations, cervical arthritis, HTN, MDD, PSTD, status post abdominal surgery, bilateral knee arthritis, bilateral hand arthritis, Heberden's nodes, and diabetes as she now alleges.

The ALJ determined at step two that claimant has the severe impairments of an adjustment disorder, mild personality disorder, not otherwise specified, depression, obesity, osteoarthritis in the left hand and thumb, and a minor disc abnormality in the lumbar spine. (AR 116). The ALJ specifically indicated that claimant has been diagnosed with hypertension, sleep apnea and allergic rhinitis, but she found that the hypertension was deemed well controlled by medication and the other impairments were considered non-severe. (AR 116). Claimant fails to establish otherwise and the medical evidence of record supports the ALJ's determination in this regard.

Regarding claimant's alleged mental impairments, as discussed in Section A, claimant did not submit evidence that she had greater mental limits than determined by the ALJ until after the ALJ issued her decision in this case finding claimant was not disabled. Supra. Claimant thus failed to meet her burden of proving that MDD, PTSD or any other mental health diagnosis significantly limited her ability to work during the relevant time period in this case.

Claimant additionally makes a cursory argument that the ALJ erred by not considering claimant's other physical impairments alleged above. (Court Doc. 13). Again, claimant failed to meet her burden of proof, and the medical evidence of record does not reflect, that these alleged impairments significantly limit her ability to perform basic work activities. Claimant has failed to meet her burden of proof, and the record does not support, that claimant's asserted impairments significantly preclude her ability to perform work. As noted above, an impairment is considered non-severe if it "does not significantly limit your physical or mental ability to do basic work activities." 20 C.F.R. §§ 404.1521, 416.921. The undersigned thus finds that the ALJ did not err at step two of the sequential evaluation process by finding that claimant does not suffer from the "severe" impairments as alleged by claimant herein.

///

///

**C.  Residual Functional Capacity Assessment**

Claimant contends that the ALJ's residual functional capacity ("RFC") finding is not supported by substantial evidence.  (Court Doc. 13).  Claimant specifically argues that the ALJ did not follow the law in Chavez v. Bowen, 844 F.2d 691 (9th Cir. 1988), which, according to claimant, requires that a prior ALJ's findings be adopted absent changed circumstances showing either improvement or worsening.  (Court Doc. 13).  Claimant asserts that the ALJ erred by not adopting the finding in an earlier ALJ decision that claimant was limited in the performance of grasping or fine manipulation.  (Court Doc. 13; AR 377).

The principles of res judicata apply to administrative decisions, although the doctrine is applied less rigidly to administrative proceedings than to judicial proceedings.  Lyle v. Secretary of Health and Human Services, 700 F.2d 566, 568 n. 2 (9th Cir. 1983).  In order to overcome the presumption of continuing non-disability arising from the first ALJ's findings of non-disability, a claimant must prove "changed circumstances."  Taylor v. Heckler, 765 F.2d 872, 875 (9th Cir. 1985).  In Chavez, the Ninth Circuit determined that principles of res judicata made binding the first ALJ's findings that the claimant had a RFC of light work, was of limited education, and was skilled or semi-skilled, and, because the second ALJ failed to afford preclusive effect to the first ALJ's determinations in this regard, the second ALJ's decision was not supported by substantial evidence.  Chavez, 844 F.2d at 694.

The ALJ in this case noted that, on January 30, 1998, an ALJ found that claimant was capable of light work "with postural and manipulative limitations."  (AR 115, 377).  The ALJ further indicated, with a reference to Chavez, that an ALJ adjudicating a subsequent claim involving an unadjudicated period will apply a presumption of continuing non-disability to the unadjudicated period.  (AR 115-116).  She noted that the presumption applies unless the claimant rebuts the presumption by presenting a changed circumstance and evidence that may demonstrate a greater disability.  (AR 116).

The ALJ herself found that there were changed circumstances resulting in a necessary departure from the first ALJ's RFC determination.  (AR 120-121).  Specifically, the ALJ determined
///

12

that claimant's manipulative restrictions had resolved following surgery. (AR 120). The ALJ found that "claimant is generally considered not restricted in regard to manipulative tasks because of the surgery to her left thumb or subsequent mild arthralgia. The claimant's surgery, in fact, is regarded throughout her treatment history as very successful." (AR 120). Accordingly, the ALJ determined that claimant's manipulative restrictions had resolved since the previous ALJ's 1998 decision. (AR 120).

Claimant argues that there is no evidence to show changed circumstances regarding her upper extremities; therefore, the limitations found by the first ALJ should still apply. (Court Doc. 18). However, the ALJ supported her finding in this regard by specifically noting its consistency with the opinion of examining physician Rustom F. Damania, M.D. (AR 120). Dr. Damania evaluated claimant on March 7, 2000. (AR 835-842). Dr. Damania opined that claimant would have no trouble working a normal eight hour work day as there were no definite physical limitations. (AR 840). He indicated that there were no definite physical limitations, and he could not detect any manipulative limitations on reaching, handling, feeling, grasping, or fingering. (AR 840). Accordingly, the ALJ properly demonstrated "changed circumstances," in accordance with Chavez, in order to diverge from the prior ALJ's RFC determination and to find that claimant's manipulative restrictions had resolved. (AR 120).

The ALJ concluded that claimant has the RFC to perform light work, finding that claimant can lift and carry, push and pull 20 pounds occasionally and 10 pounds frequently and stand, walk and sit at least six hours in an eight-hour workday, but is unable to bend, stoop, kneel or crawl more than occasionally and is restricted to simple, repetitive tasks. (AR 121). The ALJ evidenced and discussed claimant's limitations in her written decision, and the ALJ's findings regarding claimant's limitations and RFC are supported by the weight of the evidence of record and are based on proper legal standards. Thus, there is no error with regard to the ALJ's determination regarding claimant's RFC in this case.

///
///
///

**D. Vocational Expert Testimony**

Claimant also argues that the ALJ erred by failing to elicit testimony from a vocational expert in this case. (Court Doc. 13). Claimant argues that the mental and non-exertional limitations found by the ALJ required vocational expert assistance and, thus, the ALJ erred by deciding her case without such assistance. (Court Doc. 13).

After a claimant has established a prima facie case of disability by demonstrating she cannot return to her former employment, the burden shifts to the ALJ to identify specific jobs existing in substantial numbers in the national economy that claimant can perform despite her identified limitations. Hoffman v. Heckler, 785 F.2d 1423, 1425 (9th Cir. 1986). The ALJ can satisfy this burden by either (1) applying the grids or (2) taking the testimony of a vocational expert. Burkhart v. Bowen, 856 F.2d 1335, 1340 (9th Cir. 1988).

The grids are an administrative tool the Commissioner may rely on when considering claimants with substantially uniform levels of impairment. Burkhart, 856 F.2d at 1340 (*citing* Derosiers v. Secretary of Health and Human Serv., 846 F.2d 573, 578 (9th Cir. 1988). However, the use of the grids is not always proper. If a claimant has non-exertional limitations[3] that significantly limit her range of work, the use of the grids in determining disability is inappropriate. Bates v. Sullivan, 894 F.2d 1059 (9th Cir. 1990) *overruled on other grounds* Bunnell v. Sullivan, 947 F.2d 341, 342 (9th Cir. 1991). In such instances, a vocational expert must be called to identify jobs that match the abilities of the claimant, given her limitations. See, e.g., Magallanes v. Bowen, 881 F.2d 747, 756 (9th Cir. 1989). Nevertheless, if an ALJ determines that a claimant's non-exertional limitations do not significantly affect her ability to perform a full range of work, then use of the grids is appropriate. Tacket v. Apfel, 180 F.3d 1094, 1101 (9th Cir. 1999).

The undersigned has found in this case that the ALJ's RFC determination is without error. Supra. Nevertheless, the ALJ did conclude that claimant has limitations beyond exertional and is restricted by postural and mental limitations. (AR 121). Although the ALJ did not apply the grids to dictate the result in this case, the ALJ used the grids as a framework to find that, based on claimant's

---

[3] Nonexertional limitations are "all work-related limitations and restrictions that do not depend on an individual's physical strength." Soc. Sec. Rul. 96-8. See also 20 C.F.R. Pt. 416.969a; Derosiers, 846 F.2d at 579.

RFC, age, education, and work experience, there were a significant number of jobs in the economy which claimant could perform despite her limitations. (AR 121).

If an ALJ determines that a claimant's non-exertional limitations do not significantly affect her ability to perform a full range of work, then use of the grids is appropriate. Tacket, 180 F.3d at 1101. The ALJ found that claimant had the exertional capacity to perform light work and that her non-exertional limitations[4] did not "substantially erode" her ability to do the full range of light work. (AR 121). Using grid rule 202.10 as a framework, the ALJ determined that an individual with claimant's profile (closely approaching advanced age and able to perform light, unskilled work) would not be disabled. (AR 121). 20 C.F.R. pt. 404, subpt. P, app. 2, table 2, rule 202.10. Thus, the ALJ concluded that a finding of not disabled was within the framework of Rule 202.10. (AR 121).

Since the ALJ found that claimant could perform the physical and mental demands of the unskilled, light exertion jobs administratively noticed under the grids, it was not necessary for her to call a vocational expert. As noted above, if non-exertional limitations "significantly" affect a claimant's ability to perform work, then vocational expert testimony is required. Bates, 894 F.2d at 1059. However, because the ALJ in this case appropriately determined that claimant's non-exertional limitations did not "substantially erode" her ability to perform work, it was appropriate for the ALJ to use the grids. Therefore, the undersigned concludes that the ALJ did not err by failing to elicit testimony from a vocational expert. The ALJ's use of the grids as a framework to find claimant not disabled was proper in this case.

## CONCLUSION

For the reasons outlined above, the undersigned finds no error in the ALJ's analysis. As such, the Commissioner's decision to deny claimant disability benefits is supported by substantial evidence in the record as a whole and based on proper legal standards. Accordingly, this Court DENIES claimant's appeal from the administrative decision of the Commissioner of Social Security.

///

///

---

[4] The ALJ found that claimant is only occasionally unable to bend, stoop, kneel or crawl and that she is restricted to simple, repetitive tasks. (AR 121).

1 The clerk of this Court is DIRECTED to enter judgment as a matter of law in favor of defendant Jo Anne B. Barnhart, Commissioner of Social Security, and against claimant Catarina Segura.

IT IS SO ORDERED.

**Dated:   May 3, 2005**                              **/s/ Theresa A. Goldner**
j6eb3d                                                         UNITED STATES MAGISTRATE JUDGE